THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| KATIE ALLEN,<br><br>                          Plaintiff,<br>v.<br><br>THE KANSAS STATE DEPARTMENT OF EDUCATION<br><br>AND<br><br>RANDY WATSON, KANSAS COMMISSIONER OF EDUCATION, in his offical capacity,<br><br>AND<br><br>RANDY WATSON, KANSAS COMMISSIONER OF EDUCATION, in his individual capacity,<br><br>                          Defendants. | Case No.<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

Plaintiff Katie Allen, a former employee of the Kansas Department of Education, states her cause of action against Defendants, The Kansas State Department of Education and Randy Watson, Kansas Commissioner of Education, in his individual capacity, as follows:

1.      This is an action for wrongful termination based on Defendants' violation of Plaintiff's rights under the First Amendment to the United States Constitution.

2.      Plaintiff, a research analyst for the Kansas State Department of Education, came under public criticism for a comment she briefly posted on social media following the killing of conservative activist Charlie Kirk.

3. In response to demands by members of the public and by certain elected officials that Plaintiff resign or be terminated from her employment, Defendant Randy Watson terminated Plaintiff by demanding her resignation and refusing to consider any alternative.

4. The termination of Plaintiff, an employee of a public agency, for her speech as a private citizen on a matter of public concern, violated the First Amendment.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which provides original jurisdiction in this Court for suits arising under federal law.

6. Venue is proper in the United States District Court for District of Kansas under 28 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. At all times relevant to this lawsuit, Plaintiff was a resident of Manhattan, Kansas.

8. Defendant Kansas State Department of Education is an agency of the State of Kansas.

9. Defendant Randy Watson is the Commissioner of the Kansas State Department of Education. Mr. Watson held that position at all times relevant to this lawsuit.

10. Plaintiff sues Mr. Watson both in his official capacity and in his individual capacity, for actions taken under color of state law.

## FACTUAL BACKGROUND

11. Plaintiff Katie Allen started working for the Kansas State Department of Education in 2025.

12. Ms. Allen's job title was "research analyst." In that capacity, she supported an accountability project to bring certain additional services and funds to Kansas public schools.

Such additional services and funds may only be obtained based on certain evidence, and it was Ms. Allen's job to obtain that evidence. Ms. Allen's work did not involve classroom instruction or any interaction with students.

13. On September 10, 2025, conservative commentator and activist Charlie Kirk was killed during a campus event at Utah Valley University in Orem, Utah.

14. Charlie Kirk was a polarizing public figure, and comments about his killing, some laudatory of Mr. Kirk and some critical of him, quickly proliferated on social media platforms.

15. After Ms. Allen left work on September 10, as she was walking to her car, she saw a post on Facebook describing a quote by Charlie Kirk, to the effect that some level of gun violence was inevitable in a society in which numerous citizens owned firearms, and that losses from gun violence were a reasonable price to pay for the Second Amendment right to bear arms.

16. Ms. Allen posted a comment on that post, saying, "well deserved." By the time she reached her car, however, she thought better of her comment, and she deleted it. Her comment remained posted for approximately five to ten minutes.

17. Despite the short time her comment was posted, some persons saw it and spread it on social media.

18. Ms. Allen began to receive phone calls from persons who had either seen her comment or had been told about it by individuals who had seen it. At least one person posted her address online.

19. Many of the phone calls she received were from persons who were angry with her, including one from an FBI agent in Kansas City, and one from a law enforcement officer in Minnesota. Some calls contained actual or veiled threats. One email to her was titled, "resign or die," and the writer promised to "blow your f*****g brains out if you don't resign." She reported

3

these threats to the police. As the calls continued to come in, Ms. Allen feared for her personal safety and that of her family. She stopped answering her phone.

20. On September 10, 2025, Ms. Allen issued an apology for her post, stating, "late this afternoon I was walking to my car and scrolling Facebook" and in "an emotional moment I commented on a post" about the Charlie Kirk shooting. She continued, "I looked back at the post when I got to my car" and "quickly realized I didn't intend the meaning of the two words I wrote."

21. Ms. Allen continued, "For anyone who was offended by my words, I deeply apologize. That is not who I am or what I believe – which is why I deleted that comment so fast. Like many of you, I am deeply concerned about the violence and discontent happening in America today and will continue to advocate for common sense laws that keep our kids [and] community safe. When I make a mistake, I own it and promise to do better."

22. Certain Kansas elected officials and public figures, including Kansas State Senator Brad Starnes, Kansas Senate President and gubernatorial candidate Ty Masterson, and former Kansas Governor and current gubernatorial candidate Jeff Colyer, posted or otherwise commented publicly that Ms. Allen should lose her job, as well as her seat on the Manhattan-Ogden Unified School District 383 Board.

23. Colyer commented on Facebook on September 11, 13, and 15. He called Ms. Allen a "far-left extremist" and "the newest darling of the radical left in Kansas." He stated that Commissioner Watson and the Kansas Department of Education "must fire Katie Allen for cause without delay." He rejected Ms. Allen's statement that her post was a "mistake," and said, "No, it's not. It's the rotten fruit of a party that's lost its mind, incubating hate in our schools and government while pretending to be the party of tolerance."

24. On September 11, After learning of a website called FindCharliesMurderes and learning that the President of the United States had called for the punishment of persons who commented negatively on Charlie Kirk, Ms. Allen had a panic attack.

25. That evening, she sent an email to her employer suggesting she would resign. Contrary to the email, however, she continued in her role.

26. On the morning of September 15, 2025, Ms. Allen spoke with Commissioner Watson. She apologized for her post and told Mr. Watson she was seeking legal counsel to understand her rights. Mr. Watson told Ms. Allen he had received thousands of letters of complaint, and he had verified that they were all from Kansans. He also said his phone was ringing nonstop, and that he had to do something, and do something quickly.

27. That afternoon, Ms. Allen had a telephone conversation with Mr. Watson and a representative of Human Resources. Mr. Watson said he wanted Ms. Allen to resign. In response, she proposed a 30-day suspension. Mr. Watson denied that option, and again pressured her to resign. Ms. Allen stated that she would not resign, and Mr. Watson responded that she would need to be separated.

28. On September 16, 2025, the Human Resources Department send Ms. Allen an email regarding details of her separation, and characterizing her separation as a resignation.

29. Although Mr. Watson refused to offer Ms. Allen a suspension, insisting on termination, Mr. Watson himself had been offered suspension for an incident in 2022 when he made a comment many interpreted as racist.

## COUNT I
## FIRST AMENDMENT RETALIATORY DISCHARGE
## FOR EXERCISING SPEECH RIGHTS—42 U.S.C. § 1983
### (Defendant Kansas State Board of Education and
### Defendant Watson in his official capacity)

30. The First Amendment to the U.S. Constitution provides for the right of an individual to have freedom of speech. In particular, public employees speaking as private citizens on matters of public concern are protected by the First Amendment.

31. The contours of that right had long been clearly established when Defendants terminated Plaintiff. The United States Supreme Court, in 1987 in *Rankin v. McPherson*, established that the private speech of an employee of a public agency, regarding a matter of public concern, was protected by the First Amendment. In *Rankin*, a public employee commented on the assassination attempt on President Reagan, saying, "if they go for him again, I hope they get him." The Supreme Court held that the public employer's interest in discharging the employee did not outweigh the free speech rights of the employee.

32. Plaintiff was a public employee.

33. Plaintiff made the comment for which she was terminated as a private citizen.

34. The topic of Plaintiff's comment, the killing of Charlie Kirk, was an issue of public concern. Numerous Kansas elected officials posted about it, some of them specifically with respect to Ms. Allen. Mr. Kirk's killing and its aftermath was widely covered by news media across Kansas and across the nation, as well as by numerous late-night television hosts. And the President of the United States ordered that flags be lowered in recognition of Mr. Kirk's death.

35. A reasonable person who was the head of a public agency would have known, or should have known, that private speech by public employees on matters of public concern is protected by the First Amendment.

36. The conduct of Defendant Watson, speaking on behalf of Defendant Kansas State Department of Education and terminating Plaintiff for her controversial comment, violated Ms. Allen's First Amendment rights.

37. In terminating Ms. Allen, Mr. Watson acted under color of state law.

38. The First Amendment applies to Defendants by virtue of the 14th Amendment.

39. Defendants' interest in terminating Ms. Allen does not outweigh Ms. Allen's interest in her right to speech.

40. Ms. Allen's comment regarding the killing of Charlie Kirk had no bearing on her work as a research analyst or on her ability to do her work effectively and efficiently.

41. When Ms. Allen came under public criticism for her comment, Mr. Watson's obligation as a public official was to safeguard her constitutional rights. Instead, he terminated Ms. Allen in response to the vigilante spirit of the thousands of persons, including Kansas elected officials, calling for Ms. Allen to be terminated in violation of her First Amendment rights.

42. Ms. Allen's protected speech was a motivating factor in the retaliation and termination.

43. Defendants would not have retaliated against and terminated Ms. Allen in the absence of her controversial but protected speech.

44. Mr. Watson's action, acting on behalf of the Kansas State Department of Education, in retaliating against Plaintiff for her protected speech, would deter a reasonable person from engaging in similar protected speech.

45. Defendant's conduct in terminating Plaintiff's employment in retaliation for her protected speech, resulted in damage to the Plaintiff.

WHEREFORE, Plaintiff requests (1) a declaratory judgment stating that Plaintiff's termination violated the First Amendment to the United States Constitution; (2) injunctive relief, including reinstating Plaintiff in her job or, if more appropriate, awarding her front pay, and ordering Defendants to refrain from further violations of the First Amendment; (3) an award of back pay, including loss of salary and benefits that resulted from Plaintiff's termination; (4) an award of other compensatory damages resulting from Plaintiff's termination; (5) prejudgment and post-judgment interest; (6) an award her taxable costs, non-taxable costs, her expert witness fees, and her costs of litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and (7) such other and further relief as the Court may deem just and equitable.

## COUNT II
### FIRST AMENDMENT RETALIATORY DISCHARGE FOR EXERCISING SPEECH RIGHTS—42 U.S.C. § 1983
**(Defendant Watson in his individual capacity)**

46. The First Amendment to the U.S. Constitution provides for the right of an individual to have freedom of speech. In particular, public employees speaking as private citizens on matters of public concern are protected by the First Amendment.

47. The contours of that right had long been clearly established when Defendants terminated Plaintiff. The United States Supreme Court, in 1987 in *Rankin v. McPherson*, established that the private speech of an employee of a public agency, regarding a matter of public concern, was protected by the First Amendment. In *Rankin*, a public employee

commented on the assassination attempt on President Reagan, saying, "if they go for him again, I hope they get him." The Supreme Court held that the public employer's interest in discharging the employee did not outweigh the free speech rights of the employee.

48. Plaintiff was a public employee.

49. Plaintiff made the comment for which she was terminated as a private citizen.

50. The topic of Plaintiff's comment, the killing of Charlie Kirk, was an issue of public concern. Numerous Kansas elected officials posted about it, some of them specifically with respect to Ms. Allen. Mr. Kirk's killing and its aftermath was widely covered by news media across Kansas and across the nation, as well as by numerous late-night television hosts. And the President of the United States ordered that flags be lowered in recognition of Mr. Kirk's death.

51. A reasonable person who was the head of a public agency would have known, or should have known, that private speech by public employees on matters of public concern is protected by the First Amendment.

52. The conduct of Defendant Watson, speaking on behalf of Defendant Kansas State Department of Education and terminating Plaintiff for her controversial comment, violated Ms. Allen's First Amendment rights.

53. In terminating Ms. Allen, Mr. Watson acted under color of state law.

54. The First Amendment applies to Defendants by virtue of the 14th Amendment.

55. Defendants' interest in terminating Ms. Allen do not outweigh Ms. Allen's interest in her right to speech.

56. Ms. Allen's comment regarding the killing of Charlie Kirk had no bearing on her work as a research analyst or on her ability to do her work effectively and efficiently.

57. When Ms. Allen came under public criticism for her comment, Mr. Watson's obligation as a public official was to safeguard her constitutional rights. Instead, he terminated Ms. Allen in response to the vigilante spirit of the thousands of persons, including Kansas elected officials, calling for Ms. Allen to be terminated in violation of her First Amendment rights.

58. In bowing to the vigilante clamoring of persons calling for Ms. Allen to be terminated in violation of her First Amendment rights, in failing to offer Ms. Allen a lesser remedy that he himself was offered when he made racially intemperate comments, and in insisting that Ms. Allen be terminated before she had time to consult legal counsel, Mr. Watson acted with evil motive and intent or with reckless or callous indifference to Ms. Allen's First Amendment rights.

59. Ms. Allen's protected speech was a motivating factor in the retaliation and termination.

60. Defendants would not have retaliated and terminated Ms. Allen in the absence of her controversial but protected speech.

61. Mr. Watson's action, acting on behalf of the Kansas State Department of Education, in retaliating against Plaintiff for her protected speech, would deter a reasonable person from engaging in similar protected speech.

62. Defendant Watson, as Commissioner of the Kansas State Department of Education, was the final policymaker for the agency with respect to personnel decisions, including terminating employees.

63. By virtue of Defendant Watson's role as Commissioner, his decision to terminate Ms. Allen constituted the official policy, practice, or custom of Kansas State Department of Education.

64. Defendant Watson does not enjoy qualified immunity for his decision to violate Ms. Allen's First Amendment rights.

65. Defendant's conduct in terminating Plaintiff's employment in retaliation for her protected speech, resulted in damage to the Plaintiff.

WHEREFORE, Plaintiff requests (1) an award of back pay, including loss of salary and benefits that resulted from Plaintiff's termination; (2) an award of other compensatory damages resulting from Plaintiff's termination; (3) an award of punitive damages for Mr. Watson's conduct that was motivated by the evil motive or intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights; (4) prejudgment and post-judgment interest; (5) an award her taxable costs, non-taxable costs, her expert witness fees, and her costs of litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and (6) such other and further relief as the Court may deem just and equitable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial of this matter.

## JURY DEMAND

Plaintiff requests a jury trial on all issues so triable pursuant to § 5 of the Bill of Rights of the Kansas Constitution as to the Kansas law-based claims and pursuant to the Seventh Amendment of the United States Constitution and to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**DUGAN SCHLOZMAN LLC**

 /s/ *Mark V. Dugan*
Heather J. Schlozman, KS Bar # 23869
Mark V. Dugan, KS Bar # 23897
heathis@duganschlozman.com
mark@duganschlozman.com
8826 Santa Fe Drive, Suite 307
Overland Park, Kansas 66212
Telephone:  (913) 322-3528
Facsimile:   (913) 904-0213

**Counsel for Plaintiff**