**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KATIE ALLEN,

*Plaintiff,*

v. Case No. 2:25-cv-02556-EFM-JBW

RANDY WATSON, in his individual capacity,
and DR. JAKE STEELE, KANSAS
COMMISSIONER OF EDUCATION,
in his official capacity.,

*Defendant.*

---

**Declaration of Mady Carpenter**

I, Mady Carpenter, being of lawful age and am competent to give testimony in a court of law and have personal, first-hand knowledge of the facts set forth in this Declaration.

1. In September 2025, I was employed by the Kansas Department of Education as an Administrative Specialist in the Human Resources Department.

2. On September 11, 2025, I arrived at work and immediately answered two calls from individuals who were angry about Katie Allen's Facebook post concerning the shooting of Charlie Kirk.

3. I sought out Wendy Fritz, my supervisor and the Director of the HR Department, to ask for details of what happened and how to respond.

4. The calls continued at a relentless and unmanageable pace. I requested assistance from Marissa Seele, the HR Professional, because the volume of incoming calls exceeded my ability to answer them.

5. Because of the extraordinary volume of calls, Ms. Fritz directed us to stop answering them and allow them to roll to voicemail. That step was very unusual and contrary to

our ordinary practice of providing direct customer service to both external and internal callers. We attempted to review messages promptly and return calls only if they involved legitimate KSDE business, but even that triage process was difficult because the phones continued ringing almost constantly.

6. The volume of calls was overwhelming and sustained for at least three business days, and it imposed a substantial burden on agency staff and resources. Although the frequency eventually decreased, the number of calls remained materially above normal levels for at least a week.

7. All the calls were negative regarding Ms. Allen's post, and some callers were belligerent and threatening.

8. The volume of calls generated in response to Katie Allen's Facebook post materially disrupted my work and created a substantial operational burden because it prevented me from performing my regular duties. For at least three business days, I was unable to do anything other than respond to or assist with the incoming calls.

9. The calls also significantly disrupted agency operations because they prevented KSDE from using its phone lines for ordinary business. The Human Resources Department relies on the phones throughout the day, and the nonstop incoming calls tied up those lines and interfered with normal operations.

10. The calls also interfered with my ability to assist individuals with legitimate KSDE business. I was also unable to reach employees in other departments because they, too, were experiencing the same influx of calls.

11. As a result, routine business activities took significantly longer to complete because staff were required to sort through the incoming calls and messages in order to identify and respond to legitimate agency business.

12. The volume and nature of the calls were also personally disruptive because many callers were volatile, and some made threatening statements directed at me and at KSDE.

13. During my employment at KSDE, I have never experienced any comparable volume of calls. In my experience, the influx of calls generated by Katie Allen's Facebook post was unprecedented.

*PURSUANT TO 28 U.S.C. § 1746, I DECLARE CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JUNE 30, 2026.*

Mady Carpenter

Mady Carpenter