**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KATIE ALLEN,

*Plaintiff,*

v. Case No. 2:25-cv-02556-EFM-JBW

RANDY WATSON, in his individual capacity,
and DR. JAKE STEELE, KANSAS
COMMISSIONER OF EDUCATION,
in his official capacity.,

*Defendant.*

---

**Declaration of Makayla Auldridge**

I, Makayla Auldridge, being of lawful age and am competent to give testimony in a court of law and have personal knowledge of the facts set forth in this Declaration.

1. I am an Administrative Officer with the Kansas State Department of Education and serve as Assistant to the Commissioner. I have worked at the agency for approximately seven years, including about five and a half years in my current Assistant role. I was in this position in September 2025.

2. I became aware of Katie Allen's Facebook post on September 11, 2025 when I began receiving calls to the Commissioner's office in response to that post. The first calls I received called for the resignation of K. Allen, but after the Facebook post was made by a public official, the calls increased, and the nature changed with the request that the Commissioner needs to also resign or be terminated from the agency.

3. The calls escalated almost immediately. Within roughly ten minutes, the office voicemail was full, with approximately twenty-five calls filling the mailbox.

4. Over the next three to four business days, I estimate that the office received approximately 200 to 250 calls related to the Facebook post, with additional calls continuing into the following week.

5. Under normal circumstances, the Commissioner's office receives only about two to three external calls per day. This sudden influx of calls significantly disrupted the agency's ordinary operations. At first, I attempted to answer the calls politely and provide customer service, because members of the public sometimes call the office for legitimate assistance. But the volume of calls about the Facebook post overwhelmed the office phone line and made it difficult to identify and respond to callers who needed actual agency assistance.

6. Many of the callers were aggressive and hostile. I viewed them as threatening.

7. Because of the nature of the calls, I sought help from Human Resources. Wendy Fritz, the Director of HR, advised me not to answer the calls but instead monitor the voicemails. That process took substantial time and attention, because I still had to listen to the messages to separate threatening or abusive calls from legitimate communications requiring agency action.

8. By the time I finished listening to the voicemails, the voicemail inbox was already full again. This pattern continued for days.

9. The calls also impaired my ability to assist individuals with legitimate KSDE business. Ordinary agency business took substantially longer to complete because I had to sort through the overwhelming number of calls and messages to identify matters requiring a response, which further burdened agency operations and delayed legitimate work.

10. The calls also imposed a substantial operational burden on the agency because they effectively prevented use of the phones for ordinary office business.

11. The calls also created serious safety concerns in the office. Because my direct phone number for the Commissioner's office was posted online and directly associated with the controversy, I became fearful about unauthorized individuals coming to the office in person.

12. At that time, I participated in in the infant to work program offered by the State of Kanas. I had my four-month-old child at work with me. I was terrified someone unauthorized would access the office suite because of the threats being made to the Commissioner and Allen.

13. I kept the door to the office suite locked. I was advised to keep a sign on the door directing visitors to check in, and I experienced anxiety whenever someone knocked on the office door.

14. In my years at the agency, I had never experienced this level of fear or disruption.

15. In sum, the response generated by Katie Allen's Facebook post caused a significant disruption to the agency. The volume, intensity, and threatening nature of the calls interfered with the normal functioning of the Commissioner's office, diverted staff time away from regular duties, and created ongoing concern for office safety and security.

*PURSUANT TO 28 U.S.C. § 1746, I DECLARE CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JULY __1__, 2026.*

Makayla Auldridge
Makayla Auldridge